CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES
DISTRICT OF NEW MEXICO
99 AUG 31 PM 2:52

ROCIO A. BRIMHALL-MANGANO

Plaintiff,

vs.                                                     No. CIV 97-0598 MV/WWD

DR. OLEN PAUL MATTHEWS, et al.

Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment filed April 13, 1999 **[Doc. No. 66]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion will be **GRANTED IN PART** and **DENIED IN PART**, as explained below.

### BACKGROUND

Plaintiff, Ms. Rocio Brimhall-Mangano, here brings suit against her former employer, University of New Mexico (UNM), pursuant to Title VII and 42 U.S.C. § 1983, alleging employment discrimination, retaliation and violation of her First Amendment rights. Defendants have moved for summary judgment in their favor but have failed to provide the Court with a statement of undisputed facts or even highlighted exhibits, as required by the local rules. The Court has nevertheless endeavored on its own to piece together what this case is about, as described below, though on the record before it the Court is unable to make a determination as to all of the undisputed material facts.

Ms. Brimhall-Mangano was employed by UNM from 1970 to 1997 as a staff secretary, Department secretary, and most recently as Department Administrator of the Geography Department. Defendant, Dr. Olen Paul Matthews became Chair of the Geography Department in June, 1995. Defendant Dr. Hal Jackson is a part-time instructor in the Geography Department at UNM.

Plaintiff claims she is a female of Peruvian ancestry with a recognizable physical disability. Plaintiff further claims that it was because of these characteristics that Dr. Matthews, her immediate supervisor, began a campaign of harassment that culminated in her wrongful termination. Specifically, Plaintiff alleges the following:

(1) Defendant Dr. Matthews reduced her responsibilities as Department Administrator by prohibiting her from attending meetings she had attended prior to Dr. Matthews' arrival, not allowing her to be trained in new software used by the Geography Department, demanding unreasonable deadlines on projects, prohibiting her from ordering office supplies, requiring her to cut her total hours per day from nine hours to seven and one half hours per day, refusing to allow work lunches to accommodate her afternoon physical therapy appointments, and diminishing her supervisory role over work-study students.

(2) Dr. Matthews adopted oppressive policies and practices with respect to Plaintiff's job assignments which failed to accommodate her disability that had been accommodated in the past. For example, Dr. Matthews intentionally assigned Plaintiff to tasks requiring her to walk long distances which aggravated Plaintiff's condition.

(3) Immediately upon his arrival, Dr. Matthews, "singled out" Plaintiff with his harsh treatment contrary to the congenial treatment given to other personnel in the department. For

example, Dr. Matthews constantly complained to her that he could not "stand her voice" and that nobody could understand her because of her accent.

(4) Dr. Matthews accused her of "spreading rumors" about him. She twice requested, in writing, a meeting with Dr. Matthews and the other people who alleged that she had spread the rumors in order to resolve the issue. Both times, Dr. Matthews ignored the request telling Plaintiff that the matter was "officially closed."

(5) Defendant Dr. Jackson stated "I guess all Latins are alike" to which Dr. Matthews replied, "Uh Huh" and also asked Dr. Matthews whether there was "cheap labor" in the area where Plaintiff was working.

(6) Dr. Matthews stated during a faculty meeting that they were to intensify the watch over Plaintiff and two African-American work-study students.

(7) Dr. Matthews forbade Plaintiff from eating lunch at her desk and ordered her to eat in the two hottest rooms in the building.

(8) When a Native American artist came to the office to discuss selling his paintings to the department, Dr. Jackson stated in a loud voice, "I guess Rocio's having a Pow Wow today."

(9) After Plaintiff returned from a function in Miami, Florida with her Cuban husband the department computers malfunctioned. Dr. Matthews stated to Dr. Jackson, "Rocio, are you sure you didn't bring the Miami virus? Or better yet, maybe you brought the Cuban virus" and the two laughed uncontrollably.

(10) Dr. Matthews ordered Plaintiff to compose a log of her daily activities in fifteen minute increments and told her that her failure to do so would constitute "insubordination." When Plaintiff asked why she was being singled out, Dr. Matthews told her that it was "standard University policy"

3

and that "everybody does it." Yet when Plaintiff inquired about this policy with other department administrators, she learned this was not standard policy, but rather disciplinary action of which she was not advised.

(11) After University grievance and arbitration failed, Plaintiff filed a complaint with the EEOC enumerating her allegations. Since the filing of the EEOC complaint, Dr. Matthews and others retaliated against her for seeking protection of her rights by refusing to accommodate her disability, assigning her work-study student tasks, and threatening Plaintiff with reprisal and loss of employment opportunities and employment.

(12) Plaintiff filed a second complaint with the EEOC as a result of the retaliation and on March 14, 1997, Dr. Matthews physically assaulted her at her place of employment. Plaintiff claimed in her complaint that Dr. Matthews yelled at her, grabbed her arm and shook her. Immediately following the incident she called her husband and UNM Police. That day, she was placed on administrative leave by UNM pending an investigation of the incident while Dr. Matthews was not placed on administrative leave.

(13) On November 11, 1997, Plaintiff was terminated from her employment with UNM due to her alleged untruthfulness in reporting the assault and battery incident between herself and Dr. Matthews.

Defendants deny these allegations, asserting that Plaintiff failed to perform tasks as required and was ultimately terminated for allegedly fabricating the assault by Dr. Mathews.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

Defendants move for summary judgement on the following grounds: (1) UNM, former President Peck, and the Board of Regents are not proper defendants to a claim under 42 U.S.C. §1983 and that Drs. Matthews and Jackson likewise cannot be sued in their official capacities pursuant to that statute as a result of Eleventh Amendment immunity; (2) Plaintiff cannot establish that her speech was protected activity for purposes of a First Amendment claim; (3) Plaintiff's Fourteenth Amendment equal protection claims of discrimination and retaliation are impermissible attempts to raise her Title VII allegations to the level of a constitutional violation and Plaintiff's Fourteenth Amendment due process claims fail to state what process she was allegedly denied; (4) Plaintiff is not a person with a disability for purposes of the Americans with Disabilities Act (ADA); and (5) Plaintiff's mere assumption that her termination was related to her gender and/or national origin is insufficient to establish a violation of Title VII.

### I.  Eleventh Amendment Immunity and § 1983 Claims

Plaintiff brings claims against Defendants under 42 U.S.C. §1983. As Defendants correctly state, the Eleventh Amendment of the United States Constitution prohibits suit against any state department or agency, or a state official acting in his or her official capacity. Congress has not abrogated New Mexico's Eleventh Amendment immunity to permit Plaintiff's §1983 claims against Defendants. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 (1984). Likewise, Defendants are immune from suit because neither a state nor a state actor in his or her official capacity is a "person" subject to liability

for monetary damages under §1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Thus, UNM and the Board of Regents, former President Peck, Dr. Matthews and Dr. Jackson, acting in their official capacities, are all arms of the state for purposes of §1983 and are all immune under the Eleventh Amendment. Therefore these claims must be dismissed.

Moreover, Plaintiff claims that former President Peck is liable individually only due to his supervisory position at the University. Plaintiff's claim pursuant to 42 U.S.C. §1983 fails because no strict supervisory liability exists under that statute. *See Jerkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996). Plaintiff has not alleged or shown any deliberate act by former President Peck that violates Plaintiff's constitutional rights. As such, that claim must also be dismissed.

However, state officers may be personally liable for damages under § 1983 based upon actions taken by them personally in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991). The Court finds that in light of the showing made by Plaintiff in her opposition to summary judgment, sufficient factual questions have been raised to attach personal liability to Dr. Matthews and Dr. Jackson. Therefore, the §1983 claim against Drs. Matthews and Jackson in their individual capacities remains properly before the Court.

## II. First Amendment Claims

Defendants claim that Plaintiff's personal grievances do not rise to the level of constitutionally protected speech. Specifically, Defendants assert that Plaintiff's speech consisted of nothing more than personal complaints about how she was treated. Plaintiff responds that her speech addressed misconduct by University officials in violation of federal law.

"In order for a public employee to prevail on a claim that her dismissal violates protected speech rights, the court must first determine that her speech is protected by the First Amendment.

The First Amendment protects a public employee's speech when it invokes a matter of public concern." *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996); *Horstkoetter v. Department of Pubic Safety*, 159 F.3d 1265, 1271 (10th Cir. 1998). "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Hom*, 81 F.3d at 974 (*quoting Connick v. Myers*, 461 U.S. 138, 146 (1983)). "If the matter is of merely personal interest to the government employee, then the speech is not protected by the First Amendment." *Horstkoetter*, 159 F.3d at 1271. "To determine whether speech is of public concern, a court must examine the 'content, form and context of a given statement, as revealed by the whole record.'" *Paradis v. Montrose Memorial Hospital*, 157 F.3d 815, 818 (10th Cir. 1998) (*quoting Connick*, 461 U.S. at 147-48).

In this case, Plaintiff asserts that on two occasions she attempted to meet with Dr. Matthews to resolve an incident to no avail, she then complained to University officials and was unsuccessful in her attempts to arbitrate her grievances through UNM. Plaintiff also asserts that she filed two complaints with the EEOC enumerating the racial and ethnic comments and discriminatory conduct on the part of Defendants. Speech that seeks to expose improper operations of government or questions integrity of government officials clearly concerns vital public interests. *See Curtis v. Oklahoma City Public Schools Bd. of Ed.*, 147 F.3d 1200, 1211 (10th Cir. 1998). In addition, the Tenth Circuit has held that speech asserting violations of federal anti-discrimination laws by public officials touches on matters of public concern. *Paradis*, 157 F.3d at 818. In this case, Plaintiff expressed views critical and in opposition to the alleged discriminatory employment practices of Defendants and claims she was retaliated against because of these views. The Tenth Circuit has recognized these topics as matters of public concern and this Court rejects Defendants' contention

8

that such allegations are better characterized as personal grievances. Therefore, that portion of Defendants' Motion for Summary Judgment based on the assertion that Plaintiff's speech was not protected will be denied.

## III. Fourteenth Amendment

### a. Equal Protection Claims

Plaintiff's claims pursuant to 42 U.S.C. §1983 alleging that Defendants violated her right to equal protection under the Fourteenth Amendment are based on factual allegations that Plaintiff's termination was due to her gender, race, and national origin. Defendants are correct in asserting that this is an impermissible attempt to raise Plaintiff's Title VII allegations to the level of a constitutional violation. A § 1983 action may not be predicated on a violation of Title VII itself. Such a duplicative effort is barred. *Starrett v. Wadley*, 876 F.2d 808, 813-14 (10th Cir. 1989) (holding that right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983). Likewise, Plaintiff's allegation of a Fourteenth Amendment violation on the basis of retaliation is also an erroneous attempt to state a constitutional violation derived from the statutory rights available under Title VII. *Id.* Therefore, Plaintiff's equal protection and retaliation claims against Defendants will be dismissed

### b. Procedural Due Process

Defendants maintain that Plaintiff failed to state under any procedural due process allegation what process she failed to receive when terminated. However, the Court finds Plaintiff's allegations clear and unequivocal. Plaintiff avers that Defendants neglected to follow their own Business Policies and Procedures Manual by failing to proceed with progressive discipline, termination without good cause, and timely administrative review formalities. All Defendants argue is that

Plaintiff was terminated for her lack of truthfulness in reporting an incident between herself and Dr. Matthews. However, UNM has implemented an elaborate dispute resolution process and Defendants have not provided any evidence demonstrating that UNM's protocol requiring oral warnings, written warnings, suspension, proper cause, adequate notice of contemplated action, and discharge was observed. Defendants have not built a sufficient factual foundation from which the Court could grant summary judgment on this issue. Therefore, Plaintiff's procedural due process claims will remain before the Court.

**IV.    ADA Claims**

Plaintiff asserts that Defendants also discriminated against her in violation of the ADA. Specifically, Plaintiff claims that she suffers from severe asthma and shortness of breath, making it difficult for her to walk long distances and climb up stairs. Defendants respond that this does not constitute a disability within the meaning of the ADA.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Plaintiff's claim under the ADA requires that she prove (1) that she is a disabled person within the meaning of the ADA; (2) that she is able to perform the essential functions of the job with or without reasonable accommodations; and (3) that the employer terminated her because of her disability. *See Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1173 (10th Cir. 1996).

At issue in this case is whether Plaintiff is an "individual with a disability." "The term 'disability' means, with respect to an individual--(A) a physical or mental impairment that

10

substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). When the major life activity is working, however, "substantially limits" means the individual is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *Gibbs v. St. Anthony Hospital*, No. 96-6063, 1997 WL 57156 (10th Cir. Feb. 12, 1997). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Id.*

In this case, the physical limitations described by Plaintiff are insufficient to establish that she is a person with a disability for purposes of the ADA. That Plaintiff has difficulty walking long distances, climbing stairs, and experiences shortness of breath when exerting herself is insufficient to demonstrate a substantial limitation on a major life activity, particularly performing the sort of administrative tasks she describes. As Plaintiff has failed to meet one of the ADA's three requirements needed to satisfy her ADA claim, the Court need not discuss the remaining two. Accordingly, Plaintiff's ADA claims will be dismissed.

V.      **Title VII**

Defendants assert that Plaintiff's Title VII claims for gender and race discrimination against the individual Defendants are improper and that Plaintiff cannot produce sufficient evidence to support these claims in any event.

Defendants are correct that under Title VII, individual capacity suits are inappropriate. The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act. *See Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996). Accordingly, Plaintiff's Title VII claims against the individual Defendants will be dismissed.

As to the merits of Plaintiff's claims, however, it is here that the Court is unduly hampered by the failure of Defendants to include a statements of undisputed facts in their motion. The Court even requested highlighted depositions from Defendants in an effort to determine whether the Court itself could decipher whether there is a sufficient evidentiary basis for Plaintiff's claims. But, Defendants failed to provide the Court with highlighted depositions in a timely manner, despite repeated calls to counsel's office. Consequently, the Court finds that the record before it is insufficient for the Court to conduct a meaningful and fair assessment of Plaintiff's claims. Accordingly, the Court will not grant Defendants summary judgment on this issue.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment **[Doc. No. 66]** is hereby **GRANTED IN PART**, as follows:

1. Plaintiff's claims pursuant to 42 U.S.C. § 1983 are hereby **DISMISSED WITH PREJUDICE** as to UNM, the Board of Regents, former President Peck, and Dr. Mathews and Dr. Jackson in their official capacities. Plaintiff's § 1983 claims remain properly before the Court as to Dr. Mathews and Dr. Jackson in their individual capacities.

2. Plaintiff's claims pursuant to the Equal Protection Clause of the Fourteenth Amendment are hereby **DISMISSED WITH PREJUDICE**. Plaintiff's claims pursuant to the Due Process Clause of the Fourteenth Amendment remain properly before the Court.

3. Plaintiff's claims pursuant to the ADA are hereby **DISMISSED WITH PREJUDICE**.

4. Plaintiff's claims pursuant to Title VII are hereby **DISMISSED WITH PREJUDICE** as to the individual Defendants. Plaintiff's Title VII claims remain properly before the Court as to Defendant UNM.

Defendants' motion is hereby **DENIED** in all other respects.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

Attorney for Plaintiff:
    Martin Lopez, III

Attorney for Defendant
    Timothy L. White